UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERTO MENDOZA<br>*Plaintiff*, | )  3:20-CV-01449 (KAD)<br>)<br>) |
| v. | )<br>) |
| CONNECTICUT CLOSET AND SHELF,<br>L.L.C., CT HOME IMPROVEMENT<br>SERVICES LLC, and CINDY BERNIER<br>*Defendants*. | )<br>)  FEBRUARY 22, 2021<br>)<br>) |

**ORDER APPROVING SETTLEMENT AGREEMENT**

Kari A. Dooley, United States District Judge:

Pending before the Court is a Joint Motion for Settlement Approval filed by Plaintiff Roberto Mendoza ("Plaintiff" or "Mendoza") and Defendants Connecticut Closet and Shelf, L.L.C. and Cindy Bernier (the "Settling Defendants"). Mendoza and the Settling Defendants seek approval of a settlement agreement that will resolve the underlying action brought pursuant to the Fair Labor Standards Act and the Connecticut wage and hour laws. The Proposed Settlement Agreement ("the Settlement Agreement") is attached to the Joint Motion as Exhibit 1. For the reasons set for the below, the Motion is GRANTED.

**BACKGROUND & PROCEDURAL HISTORY**

Plaintiff brought this action seeking backpay for uncompensated overtime, liquated damages equal to the unpaid overtime, and attorneys' fees and costs on September 24, 2020. (Compl. ¶ 34.) The Complaint, purportedly brought on behalf of Mendoza[1] and similarly situated individuals, alleges violations of both the Fair Labor Standards Act (Count One) and Connecticut General Statutes § 31-72 (Count Two). (Compl. ¶¶ 32, 40.)

---

[1] Mendoza did not seek certification of a collective action, preliminary or otherwise.

As alleged, Plaintiff performed a number of duties during his employment, including running machinery, cutting raw material, lifting and carrying that raw material, installing closets and shelving, inventorying materials, and other tasks. (Compl. ¶ 12.) Plaintiff alleges that throughout his employment, he worked 41–46 hours per week for three weeks out of every month but that he did not receive overtime pay for hours worked in excess of 40 hours. (Compl. ¶ 26.) In addition, beginning in at least October 2017 and continuing through December 2017, Plaintiff worked 212.25 hours of uncompensated overtime. (Compl. ¶ 25.) Defendant Cindy Bernier owned Defendant Connecticut Closet and Shelf throughout Plaintiff's employment until January 2018, at which point Defendant Bernier sold Connecticut Closet and Shelf's business. (Compl. ¶ 27.) After the sale, Connecticut Closet and Shelf became CT Home Improvement Services LLC,[2] and the entity Connecticut Closet and Shelf was dissolved. (*Id.*) Plaintiff continued working for CT Home Improvement Services until his termination on October 28, 2018. (Compl. ¶ 29.)

The case has proceeded efficiently. Defendants Bernier and Connecticut Closet and Shelf received service of process on October 2, 2020, and both entered an answer and amended answer on December 4, 2020. (ECF Nos. 13, 23–24.) Plaintiff and the Settling Defendants then participated in a pre-settlement scheduling conference with Magistrate Judge Sarah Merriam on December 10, 2020. (ECF No. 25.) Following this conference, a scheduling order containing detailed instructions for effecting a productive settlement conference entered, and the settlement conference itself was scheduled for February 24, 2021. (ECF No. 27.) Judge Merriam canceled this settlement conference after the parties filed the instant motion on January 29, 2021. (ECF Nos. 28, 31.)

---

[2] CT Home Improvement Services LLC is a non-appearing defendant in this matter and is not impacted by the Settlement Agreement.

The Plaintiff and Settling Defendants' Joint Motion contained a copy of the Settlement Agreement contemplating that, upon approval of the agreement, Plaintiff would submit a Notice of Dismissal. (ECF No. 28, Ex. 1, ¶ 4.1.) During a Telephonic Status Conference held on February 22, 2021, the Plaintiff and the Settling Defendants agreed to modify the Settlement Agreement to reflect that these parties will file a Joint Stipulation of Dismissal rather than a Notice of Dismissal upon approval of the Settlement Agreement.

**LEGAL STANDARD**

Because the Fair Labor Standards Act is a "uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), parties cannot settle Fair Labor Standards Act claims through a private stipulation of dismissal with prejudice, pursuant to Fed. R. Civ. P. 41, without court approval. *Id.* at 200. The Court must "review FLSA settlements for fairness." *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). In doing so, courts in the Second Circuit routinely consider the factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d. 332 (S.D.N.Y. 2012), which include "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipate burdens and expenses in establishing their respective claims and defenses; (3) the serious of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335–36). Because the question of fairness must be decided on the totality of the circumstances, there may be other factors that should be considered.[3] *Wolinsky*, 900

---

[3] Courts may also consider whether factors—such as (1) the presence of other employees similarly situated to the plaintiff; (2) a likelihood that the claimant's circumstances will recur; (3) a history of FLSA non-compliances by the same employer or others in the same industry and geography region; and (4) the desirability of a mature record in support of a pointed determination of factual legal issues governing the law either in general or in a particular industry or workplace—weigh against approving a settlement. *Wolinsky*, 900 F. Supp. 2d at 336 (citations and quotations omitted). The concerns implicated by these factors do not appear to be present here.

F. Supp. 2d at 335; *see also Cheeks*, 796 F.3d at 206 (providing other examples of settlement agreement provisions, such as onerous confidentiality agreements, that may be objectionable).

When attorneys' fees and costs are provided for in the settlement agreement, the court must also consider the reasonableness of those fees. *Fisher*, 948 F.3d at 602–05 (holding that district courts cannot place a proportionality cap on attorneys' fees because such a cap would be at odds with the Fair Labor Standards Act's purpose). The "most critical" factor in considering attorneys' fees in these agreements "is the degree of success obtained," though many other factors may be contemplated. *See id.* at 606–07 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved.") (quotations and citations omitted). The fee applicant must submit documentation to support the request for attorneys' fees and costs. *Fisher*, 948 F.3d at 600 (citations omitted).

Should a court disagree with the parties' proposed settlement agreement, or the attorneys' fees awarded pursuant to such an agreement, the court can only choose to "(1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 605–06 (citing *Evans v. Jeff D.*, 475 U.S. 717, 726–27 (1986)) (other citations omitted). The court may "advise the parties what it would find reasonable and give them an opportunity to reach a new agreement" if it rejects the proposed settlement agreement. *Id.* at 607.

**DISCUSSION**

In the modified Settlement Agreement, the Plaintiff and Settling Defendants agree to file a joint stipulation dismissing the current lawsuit against the Settling Defendants with prejudice and

without any admissions of liability by the Settling Defendants. (Settlement Agreement 5.1.) The Settlement Agreement also releases the Settling Defendants from all claims, whether currently known or not, that Plaintiff may bring against them in the future. (Settlement Agreement ¶ 3.1.) For their part, the Settling Defendants will pay $13,500, with $6,750 to be treated as backpay subject to tax withholding and $6,750 to be treated as liquidated damages, to resolve these claims. (Settlement Agreement ¶¶ 2.1, 2.2.) Plaintiff's counsel will receive a contingency fee equal to thirty-three-and-one-third percent (33.3%) of what remains of the $13,500 settlement amount after expenses are deducted.[4] (Settlement Agreement ¶ 2.3.) Nothing in the agreement prevents Plaintiff from bringing or executing claims against Defendant CT Home Improvement Services. (Settlement Agreement ¶ 3.1.)

Having considered the applicable standards as set forth above, the Joint Motion for Settlement Approval, and the Settlement Agreement itself, the Court finds the agreement fair and reasonable and a Rule 41 stipulation of dismissal with prejudice may be filed as contemplated thereunder.

First, the Plaintiff's net award of $8,733.08 represents a recovery of approximately 54% of the Plaintiff's maximum potential recovery from the Settling Defendants, a total amount alleged to be $15,945.76. (ECF No. 28, 5.) This is firmly within the range of possible damage awards approved by other courts. *See, e.g.*, *Redwood v. Cassway Contracting Corp.*, No. 16 Civ 3502 (HBP), 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (finding a 29.1% net recovery reasonable). Moreover, the Settlement Agreement includes an allowance for both unpaid overtime wages (for which the Settling Defendants shall be responsible for payroll taxes) and the payment of liquidated damages under the statute.

---

[4] In absolute terms, Plaintiff's counsel will therefore receive $4,025.50, Plaintiff will receive $8,733.08, and $1,141.42 will go to expenses. (ECF No. 28, 5 & 7; ECF No. 28-3, 25.)

5

Second, the Settlement Agreement avoids additional expense in this matter. The parties have saved costs by engaging in good faith settlement discussions before conducting extensive discovery. Indeed, it appears that the alleged amount of overtime pay claimed by Mendoza as owed by these Defendants was well-defined even before this litigation commenced. The Complaint indicates that the Plaintiff sent a text message to Defendant Bernier, then owner of Defendant Connecticut Closet and Shelf, in December 2017 that asked for the overtime pay at issue. (Compl. ¶ 25.)

Third, the Settlement Agreement appropriately accounts for the risks of litigation faced by the parties. To win at trial, the Plaintiff would have needed to prove, in addition to the normal Fair Labor Standards Act burdens, that the Defendants acted willfully because the alleged underpayments occurred more than two years before this litigation commenced. *See* 29 U.S.C. § 255(a) (setting a general two-year statute of limitations but extending that period to three years if the defendant's violations were willful). Indeed, Plaintiff's claims may have been barred in their entirety. The additional burden creates additional risk, and, by settling his claims, Plaintiff avoids having to meet that more difficult burden and those risks. *See Cheeks*, 796 F.3d at 206–07 (balancing the burdens of litigation against the Fair Labor Standards Act's uniquely protective purpose).

There is, moreover, no evidence in the record indicating that this Settlement Agreement was the result of anything but arms-length bargaining between experienced counsel. Nor is there any indication that the agreement is the product of fraud or collusion. Given that these Defendants no longer own or operate the business at issue, the Plaintiff's circumstances are not likely to reoccur and the Court sees no other reason why this Settlement Agreement should not be approved. *See Cheeks*, 796 F.3d at 206.

Finally, the attorneys' fees contemplated in the Settlement Agreement—a contingency fee agreement for one-third of the recovery, plus costs—are reasonable, whether evaluated according to traditional criteria or compared to other Fair Labor Standards Act cases. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (discussing the traditional criteria). Though the case concluded before significant discovery occurred, the Court notes that the requested fee both serves the interests of the Fair Labor Standard Act's policy of encouraging attorneys to take these types of cases and recognizes that Plaintiff's attorneys have obtained a successful result concerning their client's claims against the Settling Defendants.

Therefore, the Joint Motion is GRANTED. The Settlement Agreement is APPROVED as modified by agreement of the Plaintiff and the Settling Defendants during the February 22 Status Conference. Plaintiff and the Settling Defendants may file a stipulation of dismissal in accordance with their modified agreement.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of February 2021.

                                                 */s/ Kari A. Dooley*
                                                 KARI A. DOOLEY
                                                 UNITED STATES DISTRICT JUDGE